IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case: 1:21-mj-00557 |
| v. | ) Assigned to: Judge Harvey, G. Michael |
| | ) Assign Date: 8/9/2021 |
| RYAN PARKER, | ) Description: COMPLAINT W/ ARREST WARRANT |
| | ) |
| | ) |
| Defendant. | ) |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Joshua Rothman, a Special Agent with the Federal Bureau of Investigation being duly sworn, depose and state as follows:

1. I have been a Special Agent with the FBI for the past thirteen years, and have been stationed at the Washington, D.C. field office that entire time. I am currently assigned to the FBI Safe Streets Task Force. In that role, I am principally involved in narcotics and narcotics-related investigations, including violent offenses related to narcotics investigations. Since 2008, I have received training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, narcotics, white-collar crimes, search warrant applications, and various other crimes.

2. Since January 2015, I have been assigned to investigate federal narcotics crimes on the FBI Washington, D.C. Safe Streets Task Force, a violent crime and gang task force. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. In the course of conducting these investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses;

1

conducting physical surveillance; conducting short-term and long-term narcotics and homicide investigations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized electronic surveillance; conducting court-authorized Title III wiretap investigations; and preparing and executing search warrants that have led to substantial seizures of narcotics, firearms, and other contraband.

3. Through my training and experience, as described above, I have become familiar with the provisions of the federal firearms laws administered under Title 18 and Title 26 of the United States Code, as well as controlled substance laws administered under Title 21 of the United States Code. I have personally conducted and participated in investigations that have resulted in the arrest and conviction of numerous individuals responsible for violations of the District of Columbia Code and United States Code including, but not limited to, narcotics and firearms offenses.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all my knowledge, or the knowledge of others, about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that a violation of 18 U.S.C. § 922(o)(1) (Unlawful Possession of a Machine Gun) has been committed by **RYAN PARKER** (**"PARKER"**).

**PROBABLE CAUSE**

6.  On August 7, 2021, approximately at approx. 7:11pm hours, Metropolitan Police Department ("MPD") Officer Shoemaker utilized the Instagram social media program and viewed a live broadcast of the account "outofstate_rynoo." During the live broadcast, there was a young, black male wearing a black hoodie, a blue medical face mask, a red t-shirt, blue jeans, and red sneakers inside a vehicle. This individual is known to Officer Shoemaker as **PARKER**. **PARKER** is also known to hang out in the area known as Fort Chaplin Apartments, specifically the 4200 block of Blaine St. NE. Based on the background of the live broadcast, Officer Shoemaker recognized the red brick buildings as the same buildings in the Fort Chaplin Apartment Complex.

7.  During this live Instagram broadcast, **PARKER** was seen holding a handgun in his left hand. The handgun had a green lower receiver with a black string tied around it and a silver slide. Attached to the firearm was a black drum magazine. Also, on the back of the slide, there was a blue "giggle switch." **PARKER** then exited a silver sedan style vehicle, and the Instagram live broadcast ended.

8.  Based on my training and experience, I know that a "giggle switch" is an after-market accessory which can be affixed to a semi-automatic handgun. When attached, to the handgun, the "giggle switch" interacts with the firing pin of the handgun in such a way as to make the semi-automatic handgun capable of fully automatic firing. As such, a semi-automatic handgun that is fitted with a "giggle switch" is properly classified as a "machinegun" as that term is defined in 26 U.S.C. § 5845(b), in that it is "designed to shoot, or can readily be restored to shot, automatically more than one shot, without manual reloading, by a single function of the trigger.".

9.  During the Instagram broadcast, when **PARKER** turned the handgun and pointed it directly at the camera, Officer Shoemaker saw no sign of an orange tip on the barrel of the

3

firearm to indicate that the firearm was a prop or toy. The size of the handgun was also consistent with a real firearm, not that of a prop or toy, which would be much smaller or even blocked. The firearm that **PARKER** possessed during the Instagram live video appeared to be a real, fully functional handgun.

10. Within minutes of the Instagram broadcast, MPD officers pulled into the 4200 block of Blaine Street Northeast at approximately 7:13pm. Officers immediately viewed an individual matching **PARKER's** description standing in the street next to a silver sedan in the 4200 block of Blaine St. NE. As Officers approached, **PARKER** immediately distanced himself from the silver sedan and walked towards the front lawn of 4201 Blaine St. NE. At this time, Officers Shoemaker and Bartley approached **PARKER** and were able to positively identify **PARKER** as the person from the video.

11. Officers Shoemaker and Bradley performed a protective pat down of **PARKER**, but did not locate any weapons. While the pat-down was being performed, Officer Serratos walked to the silver sedan and observed, in plain-view, a handgun with a drum magazine on the driver's seat. The firearm was visually identified as the handgun that **PARKER** was holding in the Instagram live video. Officer Serratos notified Officers Shoemaker and Bradley of the presence of the firearm and they attempted to place **PARKER** under arrest. At that point, **PARKER** attempted to flee and actively resisted the officers.

12. The firearm as determined to be an unserialized 9mm Personally Manufactured Firearm, commonly referred to as a "ghost gun." The firearm consisted of a green, polymer lower and a silver slide (consistent with the firearm possessed by **PARKER** in the Instagram live broadcast minutes earlier). The firearm was loaded with one round in the chamber and 36 rounds

in the attached drum magazine, and it was fitted with a "giggle switch" rendering it capable of fully automatic fire, without manual reloading, by a single function of the trigger.



13. Based on the foregoing, your affiant asserts that there is probable cause to conclude that, on or about July 16, 2021, in the District of Columbia, **RYAN PARKER** violated 18 U.S.C. § 922(o)(1), which makes it a crime to possess a machinegun.

_____
Special Agent Joshua Rothman
Federal Bureau of Investigation

Subscribed and sworn by telephone pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on August 9, 2021.

_____
HON. G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE